**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | CIV. NO.. 2:10-cv-01008 |
| Plaintiff. | ) | |
| v. | ) | |
| | ) | |
| THOMAS MEGLESS, et al. | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF TO FILE
COMPLAINT ANONYMOUSLY</u>

COMES NOW, Plaintiff, John Doe, by and through his attorneys of record and

requests that this Court permit plaintiff to pursue this action under the pseudonym "John

Doe" and in support thereof states as follows:

**I.     FACTUAL BACKGROUND**

Plaintiff, John Doe, filed the instant action with the Federal District Court of the

Eastern District of Pennsylvania on March 8, 2010 against Thomas Megless, Upper Merion

Township Area Schools Director of Safety, Richard Fonock, Upper Merion Township Chief

of Police, the Township of Upper Merion, the School District of Upper Merion and the

School Board of Upper Merion.  Plaintiff filed an Amended Complaint on May 5, 2010.  A

true and correct copy of the Amended Complaint is attached hereto as Exhibit "A".

Plaintiff alleges in his complaint that defendants Megless and Fonock published and

disseminated in an indiscriminate fashion, without exclusion, the equivalent of a "Wanted"

poster by means of email sent through the Township's School District offices, accusing

plaintiff of engaging in what they clearly characterized as pedophile-like.  They also intimated that plaintiff might have violent tendencies.  The contents of the email reprinted without proper authorization or permission, plaintiff's Pennsylvania Department of Transportation  records including his name, birth date, address, drivers license and vehicle registration information along with a set of four pictures of the plaintiff obviously taken in conjunction with prior applications for his Pennsylvania drivers license.  The email urged those to whom it was directed, and by direct implication anyone thereafter given access to it, to stop and detain plaintiff on sight or engage in the investigation of plaintiff's movements, habits, personal information and constitutionally protected personal and private business.

Plaintiff alleges that defendants' actions deprived him of his First Amendment right of freedom of movement and his Fourth and Fourteenth Amendment rights to privacy.  In addition, plaintiff brings an action against defendants, the Township,  the School District and the School Board for failure to train, supervise and discipline its agents, in association with their unconstitutional and criminal behavior in this matter.

Plaintiff also brings additional actions for damages pursuant to 18 U.S.C. § 1030, the federal Computer Fraud and Abuse Act and asks for declaratory and injunctive action pursuant to 42 U.S.C. § 1983,  28 U.S.C. §§ 2201, 2002 and 18 U.S.C. § 1030  against the School District, School Board, Upper Merion Township, Thomas Megless, and Ronald M. Fonock, to disgorge and strike from all computer databases under their control all files containing the offending email and its attachments, and to prohibit the further publication, dissemination or display of any such material.

II.   **QUESTION PRESENTED**

WHETHER PLAINTIFF SHOULD BE PERMITTED TO PROCEED UNDER A PSEUDONYM AS TO ALL FILED MATERIAL WHILE LIMITING ACCESS TO HIS ACTUAL IDENTITY  TO THE COURT AND TO DEFENDANTS ONLY?

Suggested Answer:  Yes.

III.   **RELEVANT LAW**

The Third Circuit Court of Appeals has not specifically addressed the issue whether to allow a plaintiff to proceed anonymously.  *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 371 n. 2 (3d Cir.2008).  The Court has determined, however, that the decision rests within the sound discretion of the court.  *Id*., citing, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 Lbd.2d 14 (1973), and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)., *Doe v. Frank,* 951 F.2d 320, 323 (11th Cir.1992); *Lindsey v. Dayton-Hudson Corp*., 592 F.2d 1118, 1125 (10th Cir.), cert. denied, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979).  See also, *Doe v. Stegall*, 653 F.2d 180, 184, citing, Fed.R.Civ.P. 26(c) (Federal rules "[vest] in the trial court discretion over litigants' requests for protection from 'annoyance, embarrassment, oppression, or undue burden or expense' in the discovery process. Moreover, the trial court enjoys broad discretion over discovery on jurisdictional issues.")(citations omitted))(reversing District Court's decision dismissing the case, holding it lacked jurisdiction).

In the absence of a specific test in this circuit, Federal courts located here have held that "[i]n determining whether a party may proceed under a pseudonym, the public's right of access should prevail unless the party requesting pseudonymity demonstrates that [his] interests in privacy or security justify pseudonymity." *Doe v. Evans,* 202 F.R.D. 173, 175 (E.D.PA.2001).  Factors weighing in favor include: "(1) the extent to which the identity of

the litigant has been kept confidential; (2) the bases upon which disclosure is feared or

sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public

interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the

purely legal nature of the issues presented or otherwise, there is an atypically weak public

interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the

pseudonymous party and attributable to his refusal to pursue the case at the price of being

publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate

ulterior motives." See, *Doe v. Hartford Life and Accident Ins. Co.*, 237 F.R.D. 545, 549

(D.N.J.2006) (quoting *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 467-68

(E.D.Pa.1997)).

## IV.  DISCUSSION.

### A.  Preliminary Statement as to Proceedings Before the Court

Plaintiff certainly does not assert by this motion that he will withhold his actual

identity from the Court or defendants.  On the contrary, plaintiff will certainly reveal his

identity to the Court.  Further, given the unique nature of the circumstances of this case,

defendants will immediately be able to discern the plaintiff's identity.  Furthermore, the

documentary proof plaintiff intended to submit in support of his cause actually contain

references to his name and other aspects of his personal and private existence.

Plaintiff will make additional requests to the court to file documents containing

identifying information under seal as appropriate.

### B.  Factors in favor of anonymous filing

(1)  The extent to which the identity of the litigant has been kept confidential.

Plaintiff has not revealed his name or the nature of this action to anyone other than his attorney. Plaintiff's attorney has on one occasion sent correspondence to and on one occasion discussed with the office of the solicitor of Upper Merion Township the matter at hand. A lawsuit was filed in Montgomery County Pennsylvania as a John Doe action by plaintiff acting pro se, naming both himself and the Township and its officials as "John Does". The complaint, while filed, was never served upon defendants and the limitations period of one year under Pennsylvania law has expired.

    (2)  <u>The bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases</u>.

The primary basis upon which the plaintiff seeks to file anonymously is his legitimate fear that revealing his name would likely accelerate the prejudicial insinuations set forth in the email at issue almost and certainly compound the damage the defendants have already done. It would be fundamentally unfair to require plaintiff, as a prerequisite to achieving relief, to force him to take steps that would likely reinvigorate inquiry in the public mind into his character, particularly where he did not invite the publicity that caused him the original harm. In this circumstance, the effort to achieve justice ends up thwarting it. The effects of having to reveal his identity would undoubtedly persist well past the end of this litigation, regardless of whether he were to prevail in this matter or not. His name would continue to be associated with the allegations themselves and could affect prospects for advancement of his career and threaten his ability to maintain normal personal and community relationships unaffected by stigma.

Defendants have accused plaintiff of acts that are universally held in the highest contempt. History amply demonstrates that the mere suspicion that a member of the community has engaged in or is capable of engaging in acts of pedophilia is often sufficient,

even when later proved to have been based upon perjured testimony and witness manipulation, to inflict grave and sometimes permanent injury upon the accused's reputation, privacy and ability to survive and operate normally within his community or any community.[1]

The level of revulsion and hostility attached to the identification of a person accused of tendencies to pedophilia is well-recognized by the Third Circuit.  Speaking of statutory notification measures enacted by the so-called "Megan's Laws" of the 1990's the Third Circuit commented upon the consequences of community notification measures related to registering those who have been convicted of crimes of sexual assault.

> There can be no doubt that the indirect effects of . . . notification on the [Megan's Law] registrants involved and their families are harsh. The record documents that registrants and their families have experienced profound humiliation and isolation as a result of the reaction of those notified. Employment and employment opportunities have been jeopardized or lost. Housing and housing opportunities have suffered a similar fate. Family and other personal relationships have been destroyed or severely strained. Retribution has been visited by private, unlawful violence and threats and, while such incidents of "vigilante justice" are not common, they happen with sufficient frequency and publicity that registrants j*ustifiably* live in fear of them. It also must be noted that these indirect effects are not short lived.

*E.B. v. Verniero*  119 F.3d 1077, 1102 (3rd Cir. 1997)

Here, to say the least, there is no legal justification for subjecting plaintiff to these outcomes.  ***Plaintiff has committed no crime, has never been charged with any crime and***

---

[1] The famous McMartin pre-school cases of the 1980's come to mind.  See, http://en.wikipedia.org/wiki/McMartin_preschool_trial#cite_note-cl-0 .  Another case involving persons falsely accused of pedophilia of note illustrating the mass mentality arising out of such accusations  include: *Modahl v. County of Kern*., 61 Fed. Appx. 394 (9th Cir., 2001)(Denying motions for summary judgment based on qualified immunity grounds of certain law enforcement officials and municipalities under Section 1983.  The criminal cases which formed the basis of the 1983 action involved claims of satanic ritual abuse performed by pedophile sex rings.)

*has no criminal record*.[2]  On the contrary, plaintiff's Complaint alleges that defendants engaged criminally and civilly in publicizing, without justification or legal cause, their unfounded *suspicion* that plaintiff *may be* a pedophile or that he *might* present a risk of violent behavior to members of the public in Upper Merion Township and other unspecified municipalities.  ***Of particular note is the command set forth in the "Wanted Poster" to "Stop and Investigate"*** Mr. Doe (see, Amended Complaint at ¶13), reinforcing the notion that detaining plaintiff is imperative and in the immediate public interest.

Even under these circumstances, it is certainly reasonable to presume that public insinuations such as these by persons occupying positions of power and influence in the community where plaintiff has a home present a real and immediate risk that the negative consequences of "notification"[3] enumerated above by the Third Circuit might ensue, no matter how clearly it could be demonstrated that the pronouncements at issue were motivated by fear, ignorance, prejudice, malice or stupidity.  As Judge Becker put the matter:  "In short, most of *the indirect effects of notification are* *expected* and *foreseeable*." (emphasis added)).  *Id.,* at 1124 (Becker, J., concurring and  dissenting).

Experience shows that there is a tendency among the public at large to suspect the person of possessing the trait or having committed the offense, particularly when it has no

---

[2]  It is unfortunate that plaintiff must resort to a source of law discussing the effect of community notification on the *guilty* to make the point as to the effect of "notification", as it were, as to one who is guilty of nothing.  The mere process of having to make the distinction and to continue to do so throughout this motion is indicative of the predicament in which plaintiff has been placed.

[3] Plaintiff uses the word "notification" advisedly, and only to enlist its use to borrow the concept from the opinions he cites, even though it is apparent that there is a difference between its use as a legitimate governmental vehicle to put the public on notice of one convicted of a crime and an illegitimate use of that method by government or its officials without even the most minimal element of acceptable proof that any actual offense has occurred or is likely to occur.

particular knowledge of the accused's character or personality and no other basis for forming

a judgment about him. See, *Id*., at1126 (Becker, J., concurring and dissenting). (**_The effects_**

**_of notification permeate [the subject's] entire existence_**. Here the punitive effects are

dominant and ***inescapable***. Notification is an affirmative placement by the State of a form of

public stigma on [the subject], and this stigma by its very nature pervades into every aspect

of an [subject's] life..")(citations, internal quotation marks and punctuation

omitted)(emphasis added).

Experience also shows that the public at large is likely to act upon its suspicions

rather than ignore or dismiss them. *Id*. at 1104-05.  See also, concurrence, Id., at 1124.

(citing  study conducted by State Institute for Public Policy,  reporting "numerous instances

of harassment . . .  some quite severe" under a 1990 Community Protection Act notice

program related to sex offenders)(reference omitted).  The possible, or as Judge Becker more

aptly put it, the "***expected* and *foreseeable***"  public or individual action that may ensue ought

to be sufficient grounds to permit plaintiff to use every available mechanism within the

armamentarium provided by law to preserve his ability to seek redress without risking

serious, undeserved collateral consequences including indelible stigma and the possibility of

retaliatory behavior.

(3)     The magnitude of the public interest in maintaining the confidentiality of the
         litigant's identity.

The public has an interest in protecting persons whom government operatives have

accused, *without factual foundation or due process*, of committing or having the capacity to

commit heinous crimes.  There would be little to deter rogue government operatives from

using public resources to impugn the character of others for their own purposes, knowing that

the volatility of their accusations might ultimately deter their victims from seeking

vindication.  Thus, without demonstrated access to the protections of anonymity, other

persons such as plaintiff  who are similarly situated may well be deterred from using the

courts to vindicate their statutory and Constitutional rights to privacy and freedom of

movement.  See, *Doe v. Evans*  202 F.R.D. 173, 176 (E.D.Pa.,2001).

> (4) Whether there is an atypically weak public interest in knowing the litigatnt's
> identity.

The public has no particularly strong interest in knowing the plaintiff's identity at this

time.  The questions raised in the public pleadings are of sufficient moment to inform the

public of the nature of this proceeding and the issues at hand within it.

Plaintiff believes that the issues surrounding false and unfounded accusations

disclosed in the manner herein alleged are in themselves important topics of public concern.

Revealing plaintiff's identity, however, will have no particular effect on the public's ability

to understand the issues.  Moreover, in this matter the identities of the defendants and their

alleged actions give the public full notice of the competing interests in the suit and also

explain the need for plaintiff to maintain his anonymity.

> (5) The undesirability of an outcome adverse to the pseudonymous party and
> attributable to his refusal to pursue the case at the price of being publicly
> identified.

Plaintiff is well aware of the risks associated with his refusal to pursue the matter

absent a grant of anonymity, whatever those may be, and accepts them.  His decision to

proceed in this manner reflects his understanding that society's instincts revolve around the

protection of  defenseless children and that because this instinct is so deep there would be a

strong tendency in the public at large  to presume his guilt whether he is willing to divulge

his identity or not.  It is suggested that the present suit is a forum for determining whether the

public officials and institutions being sued have exceeded or abused their powers.   There

will be many who will understand this, and there will be those who will not regardless of whatever plaintiff does or says.

(6) <u>Whether the party seeking to sue pseudonymously has illegitimate ulterior motives.</u>

The record, when fully revealed, speaks for itself in this matter.  Plaintiff has physical evidence which he is able to present at the outset of this litigation to show that the wrongs of which he complains occurred.  Plaintiff's complaint clearly does not go beyond the boundaries of  seeking constitutional and statutory redress for harms related to that evidence and against persons or entities he believes are or may have been involved in the wrongs alleged.  Additionally, plaintiff does not have a criminal record and is thus not attempting to proceed anonymously to hide a criminal background.

**B.  <u>Factors Weighing against the use of a Pseudonym:</u>**

Factors that weigh against the use of pseudonyms are: "(1) the universal level of public interest in access to the identities of the litigants; (2) whether, because of the subject matter of the litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identity, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated." Id. at 550 (quoting  Id. at 468).

(1) <u>The universal level of public interest in access to the identities of the litigants.</u>

It is suggested that the only "universal level of public interest" at issue here is not one that would serve as a legitimate basis for denying plaintiff's request to remain anonymous.  Quite the contrary would seem to be true.  Public interest cannot categorically be equated with the "right to know".  That is, where the matter at hand involves allegations of deviant sexual behavior, the interest would stem in plaintiff's view, more likely than not, from the

public's curiosity and its predisposition to become immersed in spectacle rather than from any inherent interest in the legal issues at hand.  This is not to say that there would not also be a segment of the public that would look upon the proceedings in terms of the legal issues evidently presented in any event.  Plaintiff believes, however that a segment of the public's "interest" in this matter would by and large be rooted primarily in the underlying salacious themes suggested by the nature of the accusations involved.

       (2) <u>A particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained.</u>

There is no unusually strong interest ordinarily identified as such that would compel revealing plaintiff's identity.  The issues raised by plaintiff himself in his complaint, along with identities of the persons and entities against whom he brings the actions set forth, fully inform the public of the nature and import of the issues involved in this matter.  Plaintiff is by no means a public figure and wishes to remain so.  The subject matter of the litigation is, as already described, something which would counsel allowing plaintiff to remain anonymous due to the inherently scandalous nature of the accusations made against him by defendants and the additional weight likely to be given to those accusations by their having been made by persons in positions of authority and influence in the local government and local community where plaintiff resides.

       (3) <u>Whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated</u>

Plaintiff cannot foresee any legitimate basis for opposition to his request, but will answer any assertion by any interested person or entity that such interests exist.  While plaintiff is not in a position to judge what may motivate opposing counsel to oppose the pseudonymous filing, the only reason plaintiff could foresee motivating such opposition

would be counsel's calculation that forcing plaintiff to identify himself by name would tend

to discourage his moving forward with the matter on the merits.  Plaintiff believes that the

opposition to the pseudonymous filing as to the public or press, should such opposition

develop, would in significant part be rooted in the public's seemingly unquenchable desire,

motivated largely by its apparent attraction to matters related to sex crimes, particularly those

alleged committed against children, often with a rush to judgment.

## V.    <u>CONCLUSION</u>

There is a strong and well-justified need for plaintiff to remain anonymous.  Plaintiff

does not wish to compound the injury already visited upon him by the publication of his

name, likeness, address and other personal details of his life within the small community in

which he lives.  He has done nothing wrong.  He has never been arrested and has no criminal

record.  Requiring plaintiff to reveal his identity could affect prospects for advancement of

his career and threaten his ability to maintain normal personal and community relationships

unaffected by the scandalous and unfounded insinuations of crime made by defendants

against him.

Plaintiff should not have to withstand such publicity in order to vindicate his

constitutional right to preserve his personal privacy and freedom of movement, rights  that

are at the core of this action.

There is no foreseeably legitimate litigatory or public interest in revealing plaintiff's

identity.  The public's  knowledge of plaintiff's identity associated with the baseless

accusations of depravity made against him serve no legitimate public interest and would

likely only stir up unreasonable animus against him were his identity revealed .

Plaintiff should be permitted to move forward in this matter, to the greatest degree now possible, without fear of risking additional and unjustified stigmatization.

WHEREFORE, Plaintiff requests that this Court grant Plaintiff leave to file the Complaint in the instant action anonymously and proceed hereafter as "John Doe".

RESPECTFULLY SUBMITTED,

SCHROM, SHAFFER & BOTEL

/s/  Gerard K. Schrom (GKS2134)
Gerard K. Schrom, Esquire
PA Attorney I.D.: 39282

/s/  Neil E. Botel (NEB0703)
Neil E. Botel, Esquire
PA Attorney I.D.:84953

Attorneys for Plaintiff,
John Doe
Address: 4 West Front Street
Media, Pennsylvania 19063
610-565-5050 (Phone)
610-565-2980 (Fax)

Date:  May 5, 2010